**Larry Jerome MOORE, Plaintiff,**

v.

**PRISON HEALTH SERVICES, INC., et al., Defendants.**

**No. 95–1289–DES.**

United States District Court,
D. Kansas.

Sept. 30, 1998.

evidence that less intrusive means were not available. *Id.* at 44.

Dwight A. Corrin, Wichita, KS, for Larry Jerome Moore.

Gary M. Austerman, Mary T. Malicoat, Klenda, Mitchell, Austerman & Zuercher, L.L.C., Wichita, KS, Tara L. Bragg, Gilliland & Hayes, P.A., Hutchinson, KS, for Prison Health Services, Marvin Mettscher, Louisa Osborne.

Michael R. O'Neal, Gilliland & Hayes, P.A., Hutchinson, KS, for Sharon L. Baucom.

Timothy G. Madden, Kansas Department of Corrections, Topeka, KS, for Raymond Roberts, Nadine Belk, Robert Hannigan, Steve Dechant, Dale Sturgeon, Robert Dale, Elizabeth Long.

**MEMORANDUM AND ORDER**

SAFFELS, Senior District Judge.

This matter is before the court on an action filed by an inmate in the custody of the Kansas Department of Corrections alleging violations of the Americans with Disabilities Act (ADA), the Rehabilitation Act, the Eighth and Fourteenth Amendments under 42 U.S.C. § 1983, and state law claims.

Defendants have filed a motion for summary judgment (Doc. 19); plaintiff filed a response (Doc. 23), and defendants filed a reply (Doc. 26). The court has reviewed the record and makes the following findings and order.

**Factual Background**

Plaintiff has an above the left knee amputation, and according to an assessment prepared on or about May 20, 1993, he used a prosthesis and crutches or a wheelchair for mobility. At all relevant times, defendant Prison Health Services (PHS) was responsible for the acquisition, maintenance, and repair of wheelchairs and other medical equipment. (Doc. 17, *Martinez* report, Ex. 4.) On at least one occasion, defendant Marvin Mettscher, Health Services Administrator at HCF, counseled plaintiff about abusing wheelchairs by dropping into the seat without using the arms for support and traveling too quickly in wheelchairs, particularly on corners. *Id.*

On June 10, 1992, plaintiff was issued a blue wheelchair at the Hutchinson Correctional Facility (HCF), and he signed a form acknowledging that the chair was functional for his use and in good working order. *Id.*, Ex. 1.

He apparently used this wheelchair without incident until June 17, 1993, when a support bar under the chair seat broke, causing plaintiff to fall from the chair. *Id.*, p. 5. Plaintiff was examined on the same day at the HCF clinic by defendant Dennis Goff, a nurse practitioner. Goff examined plaintiff's stump but found no injury. *Id.*, p. 6.

Later that day, plaintiff was issued another wheelchair by defendant Louisia Osborne, Director of Nursing at HCF. Plaintiff again signed a statement acknowledging the chair was functional for his use and was in good

working condition. *Id.*, Ex. 6. At the time plaintiff was issued this chair, another, newer wheelchair was available but was maintained for emergency use and kept in the HCF clinic. *Id.*, Ex. 7.

Plaintiff attended sick call[1] on June 18, 1993, and complained of soreness and pain. No injury was found, and plaintiff did not complain about the replacement wheelchair at that time. *Id.*, Ex. 8.

On Saturday, June 19, 1993, plaintiff cut his hand on a sharp piece of metal while rolling his wheelchair. This injury was recorded in an incident report prepared on that day by Officer Mike Wilson. *Id.*, Ex. 10. Officer Wilson was not present when the injury occurred, but his report notes the left tire on the wheelchair was bent, making it difficult to roll the chair. *Id.*

On the following day, plaintiff's wheelchair collapsed or fell over when plaintiff was retrieving towels from the shower area. Officer John Case prepared an incident report which documents that the wheelchair had a bent left wheel. Photographs of the chair were taken, and copies are included in the *Martinez* report. *Id.*, Ex. 12. Plaintiff was taken to the HCF clinic and examined, but he refused to remain in the clinic for observation. *Id.*, Ex. 13.

## Discussion

### Standard for summary judgment

Summary judgment is proper where the pleadings, depositions, answers to interrogatories and admissions, together with affidavits, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The rule provides that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden to show there is a lack of evidence to support the non-moving party's case. *Celo-*

*tex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Shapolia v. Los Alamos Nat'l Laboratory*, 992 F.2d 1033, 1036 (10th Cir.1993).

Once the initial showing is met, the burden shifts to the non-moving party to identify specific facts showing a genuine issue of material fact exists and requires trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The non-movant must do more than merely show there may be some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A party may not simply rely on the allegations contained in its pleadings but instead must demonstrate the existence of a genuine issue of material fact through admissible evidence. *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir.1995), *cert. denied*, 516 U.S. 1160, 116 S.Ct. 1045, 134 L.Ed.2d 192 (1996). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to the party's case, and on which that party will bear the burden of proof. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

### Eighth Amendment Claim

Plaintiff seeks relief under the Eighth and Fourteenth Amendments, alleging he was subjected to cruel and unusual punishment. To evaluate this claim, the court must examine whether plaintiff was denied the "minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 304, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). If this threshold is met, the defendants are subject to liability if they acted with "deliberate indifference" to a substantial risk of serious harm to plaintiff. Mere negligence will not establish cruel and unusual punishment. *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Instead, to support liability, the defendants' conduct must be "wanton." *Wilson*, 501 U.S. at 302–03, 111 S.Ct. 2321. Similarly, prison officials violate the Eighth Amendment when they are deliberately indif-

**1.** HCF has medical staff on duty seven days a week, 24 hours a day. Sick call is held daily

Monday through Friday.

ferent to a prisoner's "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106, 97 S.Ct. 285; *see also El'Amin v. Pearce*, 750 F.2d 829, 832–33 (10th Cir.1984) (proper forum for medical malpractice is the state court); *Daniels v. Gilbreath*, 668 F.2d 477, 488 (10th Cir.1982) (deliberate indifference "is a more severe and exacting charge than malpractice").

■ A review of the record reveals several factors which counsel against relief on plaintiff's Eighth Amendment claim. First, this is not a situation in which plaintiff was denied necessary medical equipment. Prison authorities at all times recognized plaintiff's need for a wheelchair to assure him mobility for full access to prison programs. Next, while it is now apparent that plaintiff was not given the newest or best available equipment, the evidence, even when viewed in the light most favorable to plaintiff, does not reasonably suggest that defendants gave plaintiff dangerously defective equipment. In reaching this conclusion, the court notes that plaintiff signed forms on two occasions which reflected that the equipment issued to him was essentially suitable and in good working order and that there is no evidence that plaintiff submitted a grievance through the administrative remedy process available to state inmates. There also is some indication in the record that plaintiff was known to have used medical equipment in an unnecessarily rough manner, suggesting a reasonable basis for a discretionary decision to issue him an older wheelchair. Finally, it must be noted that plaintiff was offered medical care immediately after each occasion on which he fell. Attending personnel noted no injury to plaintiff beyond his subjective complaints of pain, and on one occasion plaintiff declined to remain in the facility clinic for medical observation.

Based upon the record, the court finds no basis to conclude plaintiff was subjected to deliberate indifference constituting cruel and unusual punishment in the issuance of medical equipment or in the provision of necessary medical care.

**ADA Claim**

The ADA contains three titles which address discrimination against persons with disabilities in three contexts. Briefly summarized, Title I bars employment discrimination, 42 U.S.C. § 12112, Title II bars discrimination in services offered by public entities, 42 U.S.C. § 12132, and Title III bars discrimination by public accommodations engaged in interstate commerce, such as restaurants, hotels, and transportation carriers. 42 U.S.C. §§ 12182, 12184.

It is now clear that Title II of the ADA applies to state prisons and prison services. *Pennsylvania Department of Corrections v. Yeskey*, —— U.S. ——, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998). Title II became effective in January 1992 and states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A "qualified individual" is defined as a person who "meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

■ Generally, a plaintiff proceeding under Title II must show he is a qualified individual who, because of a disability, has been denied the opportunity to participate in or to obtain the benefits of services, programs, or activities offered by a public entity. *Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998).

■ It is clear from the pleadings that plaintiff is a qualified individual under Title II. However, having carefully reviewed the record, the court finds no evidence to support the contention that due to his disability, plaintiff has been unable to participate in programs or otherwise to enjoy benefits offered to others incarcerated in the custody of the Kansas Department of Corrections. In contrast, it appears plaintiff was provided with the equipment to assure his access to a range of programs and services.

Plaintiff's claim is akin to that considered by the United States Court of Appeals for

the Seventh Circuit in *Bryant v. Madigan*, 84 F.3d 246 (7th Cir.1996). Bryant, an Illinois state inmate and a paraplegic, sued prison employees under the ADA and the Eighth Amendment, alleging he was injured because he was denied guardrails for his bed. Due to his paraplegia, Bryant suffered a leg spasm and fell from his bed, breaking his leg in the fall. He also alleged that after an operation to repair his leg, he was denied medication for pain. Reviewing the district court's entry of summary judgment for the defendants, Chief Judge Posner determined the plaintiff failed to state a claim under the ADA, finding that plaintiff's core complaint was incompetent treatment for his underlying medical condition. Such a complaint does not state a claim for relief under the ADA because "[t]he ADA does not create a remedy for medical malpractice." *Bryant*, 84 F.3d at 249.[2]

Like Bryant, the plaintiff in this action has stated no more than a claim which challenges the medical care provided for his medical condition. He has not stated a claim for relief under the ADA because he does not complain he has been "denied the benefit of the services, programs, or activities" of the prison system due to discrimination based upon his disability. *Compare Clarkson v. Coughlin*, 898 F.Supp. 1019 (S.D.N.Y.1995) (granting relief under Rehabilitation Act, ADA, due process and Eighth Amendment where hearing-impaired inmates alleged their rights were violated by, *inter alia*, practice of conducting disciplinary, grievance, and parole hearings without providing interpretive services or assistive devices).

Plaintiff's claim under the ADA is no more than a challenge to his medical care and therefore fails to state a claim for relief.

## Rehabilitation Act Claim

Plaintiff also seeks relief under the Rehabilitation Act, which became effective in 1973. Under § 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability" may "be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The term "program or

activity" is defined to encompass "all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government." 29 U.S.C. § 794(b).

To prevail on a claim under this law, the plaintiff must show he is a qualified individual with a disability, he has been denied the benefit of a program or activity from a federally-funded public entity, and that he was the victim of discrimination based upon his disability. 29 U.S.C. § 794(a).

While it again appears clear the plaintiff satisfies the criterion of a qualified person with a disability, the court finds no evidence which reasonably suggests he has been denied a benefit offered by a federally-funded entity due to discrimination based upon his disability. Because plaintiff's claim fails to allege such a denial, it does not satisfy the statutory criteria for relief under the Rehabilitation Act.

### Conclusion

For the reasons stated, the court concludes this matter does not present a federal claim which merits relief. Accordingly, the court directs the clerk of the court to enter summary judgment for the defendants on plaintiff's claims under the Eighth and Fourteenth Amendments, the Rehabilitation Act, and the ADA.

Because a district court may decline to exercise supplemental jurisdiction over state law claims when all of the federal law claims over which it had original jurisdiction are dismissed, 28 U.S.C. § 1367(c), the court dismisses plaintiff's claims arising under state law without prejudice.

IT IS THEREFORE ORDERED plaintiff's claims under the Eighth and Fourteenth Amendments, the Rehabilitation Act, and the ADA are dismissed for the reasons stated herein.

IT IS FURTHER ORDERED plaintiff's claims arising under state law are dismissed

---

**2.** The appellate decision reversed the lower court in part based on its finding that the unrepresented inmate had not been given notice of the con-

sequences of a failure to respond to the motion for summary judgment submitted by defendants.

without prejudice pursuant to 28 U.S.C. § 1367(c).

**IT IS SO ORDERED.**