[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15230
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cv-00104-MHT-WC


DONNELL FLOURNOY,

Plaintiff-Appellant,

versus

MARK CULVER, et al.,

Defendants,

SKIP DUFFIE,
CCO Staff,
VERONICA ALVARDO,
CCO Staff,
GARY KNIGHT,
Director CCO,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(August 13, 2013)

Before HULL, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Plaintiff Donnell Flournoy, an Alabama state prisoner, appeals the district court's grant of summary judgment in favor of the defendants, Skip Duffie, Veronica Alvarado, and Gary Knight, all employees of the Houston County Community Corrections Work Release Program, on Flournoy's due process claim under 42 U.S.C. § 1983 and his claim of disability discrimination under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq.  After review, we affirm.

## I.  STATE COURT PROCEEDINGS

### A.    Flournoy's State Court Sentence

In November 2009, Plaintiff Flournoy was convicted in Alabama state court of possession of a controlled substance.  Through his attorney, Flournoy advised the state court that he was able to work.

On December 3, 2009, the state court sentenced Flournoy to a fifteen-year imprisonment sentence, but suspended that sentence on the condition that Flournoy

serve one year on probation under the supervision of the Houston County Work Release Program.

On December 9, 2009, Defendant Skip Duffie, Flournoy's probation officer, interviewed Flournoy and read to him the conditions of work release. These included, among other things, that: (1) if Flournoy did not comply with the conditions, rules and regulations of the work release program, he would be removed from the program and returned to the Houston County Jail; (2) Flournoy was required to report to job placement personnel (Defendant Veronica Alvarado), who would assist him in finding employment and could not look for employment on his own; and (3) if Flournoy failed to get approved employment, he might be removed from the work release program.

Flournoy signed a form listing these and other conditions for participating in the work release program and applying for acceptance into the work release program. Flournoy also completed a supplemental form indicating that he was disabled due to combat injuries as a Vietnam veteran, but was able to work and did in fact work as a painter, house remodeler, and a certified paralegal. Flournoy noted that he wore an orthopedic back brace to help him perform his work.

**B.    Work-Release Probation**

Defendant Alvarado worked with Plaintiff Flournoy for over three weeks, but was unable to find a job for him. On December 29, 2009, Defendant Alvarado

3

informed Defendant Duffie, the probation officer, and Defendant Gary Knight, the director of the work release program, that Plaintiff Flournoy was unable or unwilling to maintain employment as required by the work release program. Duffie asked Alvarado to put her views in a letter to him, which Alvarado did on the same day. In her letter, Alvarado stated that Plaintiff Flournoy "has been found to be unemployable." The letter further indicated that Flournoy "has disabilities that make it difficult for him to seek full-time employment" and that Flournoy "states that it is difficult for him to work."

On December 30, 2009, Defendant Probation Officer Duffie prepared a delinquency report to the state court judge based on Flournoy's failure to comply with the conditions, rules, and regulations of the work release program. Duffie's delinquency report indicated that Alvarado had "deemed . . . Flournoy unemployable," that Flournoy had told Alvarado that "due to his medical conditions . . . it is to[o] difficult for him to work," but that "Flournoy understands that he must work at a place of employment to be eligible for [the work release program] and signed an intake document stating that he must work." Duffie recommended that Flournoy be returned to the Houston County Jail until his revocation hearing.

## C.    Revocation of Work Release and Probation

On January 12, 2010, the state court held a hearing on the delinquency report.  Plaintiff Flournoy appeared pro se at the hearing.

Defendant Duffie testified that although Flournoy understood going into the work release program that he was required to have a job, he said he could not work and "declined to go get one."  When the state court asked Flournoy whether he wanted to cross-examine Duffie, Flournoy said no.  After the state court placed Flournoy under oath, he testified that he was disabled and could not work.

The state court explained to Flournoy that if he could not work, he could not be in the work release program.  The state court found that Flournoy had violated the terms and conditions of his probation because he failed to obtain or maintain employment and revoked his probation.  Flournoy was removed from the work release program and was committed to the custody of the Alabama Department of Corrections ("ADOC").

## II.  DISTRICT COURT PROCEEDINGS

Plaintiff Flournoy filed this pro se action, alleging that the defendants violated his due process and equal protection rights and the "Disability Acts, Social Security Act and Handicapped Acts" when his probation was revoked and he was

5

removed from the work release program.  Flournoy asked for injunctive relief and damages.[1]

The defendants filed a special report and answer, which included sworn statements and documentary evidence reflecting the above facts.  A magistrate judge issued an order advising Flournoy that (1) the special report and answer would be treated as a motion for summary judgment and (2) he had an obligation to respond to the summary judgment motion with sworn statements and other evidence to show a genuine issue of material fact

Plaintiff Flournoy filed an unsworn response to the special report and answer.  Flournoy's response argued that he "raised clear constitutional grounds . . . that shows Defendants' failure to give Plaintiff an equal protection and due process rights to participate in the Houston County Work Release Program once assigned, due to his handicapes [sic] and disibilities [sic]" and that Defendant Alvarado "failed to give Plaintiff an equal protection opportunity to be employed due to Plaintiff's disibilities [sic]."

Plaintiff Flournoy did not submit any affidavits or other sworn statements. He did attach several uncertified documents to his response, including: (1) a signed physician's statement, dated July 13, 2006, indicating that, for purposes of

---

[1]Pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (iii), the district court dismissed with prejudice Flournoy's claims against defendants Houston County Commissioner Mark Culver and Lieutenants Jones and Napa.  Flournoy's counseled appeal brief does not challenge the dismissal of these claims.

Alabama Code § 9-11-54 (special fishing licenses for totally disabled people), Flournoy was permanently "disabled" due to chronic back pain; (2) a copy of Defendant Duffie's delinquency report; (3) what appears to be a March 2010 ADOC form relating to Flournoy's inmate classification, which notes a "physical inability to perform hard labor per report in subjects possession," and "various health concerns to include metal pin in back," but that "overall record appears manageable in level II minimum"; (4) an ADOC inmate summary dated December 9, 2009, showing Flournoy was assigned to the Houston County work release program and had a total term of 1 year, a minimum release date of November 4, 2010, and a long date of November 4, 2010; (5) an ADOC inmate summary dated February 2, 2010, showing he was removed from the work release program on January 12, 2010, and had a total term of 15 years, a minimum release date of June 8, 2014, and a long date of October 3, 2024; and (6) an undated application for a disability access parking pass signed by a physician, stating that Flournoy could not walk two hundred feet without stopping to rest or walk without the use of a brace, cane, crutch, another person, prosthetic device wheelchair or other assistive device.

The magistrate judge entered a report ("R&R") recommending that the defendants' summary judgment motion be granted. The magistrate judge concluded, inter alia, that: (1) Flournoy's request for injunctive relief was moot

because Flournoy recently was released from the Houston County jail; (2) Flournoy received notice and a hearing before his probation was revoked and he was removed from the work release program and thus received due process; (3) Flournoy did not allege that the decision to remove him from the work release program was based on a constitutionally protected interest and his allegations did not rise to the level of an equal protection violation; and (4) Flournoy had abandoned his statutory disability discrimination claims.

Flournoy filed an objection to the R&R, arguing, inter alia, that "he never abandon[ed] any such alleged civil action, and has raised clear constitutional grounds in his complaint that will show the defendants discriminated againts [sic] the Plaintiff because of black race and failed to give an equal protection, and due process due to his handicapped, and disibilities [sic], and legally blind, disable[d] Viet-nam vetran [sic]."  Flournoy further argued that disabled prisoners were protected by the ADA, "which provides that . . . no qualified individual with a disability shall by reason of such disibility [sic], be excluded from participation in or be denied the benifits [sic] of services, rehabilitation programs, activities of a public entity . . . ."

8

The district court overruled Flournoy's objection, adopted the R&R, and granted summary judgment to the defendants. Flournoy filed this appeal, and this Court appointed counsel.[2]

### III. DISCUSSION

#### A.    ADA Claim

Under Title II of the ADA, a "qualified individual with a disability" cannot be excluded from participating in, or be denied the benefits of, services, programs, or activities of a public entity "by reason of such disability" or "be subjected to discrimination by" the public entity. See 42 U.S.C. § 12132.[3] "The Supreme Court has instructed that a disabled prisoner can state a Title II ADA claim if he is denied participation in an activity provided in state prison by reason of his disability." Bircoll v. Miami-Dade Cnty., 480 F.3d 1072, 1081 (11th Cir. 2007) (citing Pa. Dep't of Corrs. v. Yeskey, 524 U.S. 206, 210, 118 S. Ct. 1952, 1955 (1998)).

---

[2]Flournoy's counseled brief does not raise any issue with respect to his equal protection claim or his claim for injunctive relief and has thus abandoned those claims. See United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003).

[3]The parties dispute whether Flournoy abandoned his statutory ADA claim in the district court by referring to it as a constitutional claim in his pro se response to the defendants' summary judgment motion. We need not resolve this issue, however, because, even if he did not abandon his ADA claim, the district court properly granted summary judgment on that claim. See Bircoll v. Miami-Dade Cnty., 480 F.3d 1072, 1088 n.21 (11th Cir. 2007) ("This Court may affirm on any ground supported by the record.").

"In order to state a Title II claim, a plaintiff generally must prove (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." Bircoll, 480 F.3d at 1083.[4]

Here, Plaintiff Flournoy failed to present evidence establishing the first prong of a prima facie case. Title II defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications . . ., meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2); see also 28 C.F.R. § 35.104. The parties do not dispute that Flournoy has a disability. See 42 U.S.C. § 12102(1) (defining "disability" as "a physical or mental impairment that substantially limits one or more major life activities" or "a record of such an impairment" or "being regarded as having such an impairment"); see also 28 C.F.R. § 35.104 (defining an individual with a disability as "a person who has a disability").

---

[4]We review de novo a district court's grant of summary judgment. Liese v. Indian River Cnty. Hosp. Dist., 701 F.3d 334, 341 (11th Cir. 2012). Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "At this stage in the proceedings we are required to view all of the evidence in a light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." Liese, 701 F.3d at 342 (quotation marks omitted).

10

However, the undisputed evidence also shows that Flournoy did not meet the essential eligibility requirements for "participation in programs . . . provided by a public entity."  See 42 U.S.C. § 12131(2).  Flouroy told the state court he could work, and the state court permitted Flournoy to enter the Houston County work release program.  Further, the record indicates that, upon entering the work release program, Defendant Duffie told Flournoy he would be required to work to stay in the program, and Flournoy also represented to Duffie that, despite his disability, he was able to work.  However, after three weeks of trying to find Flournoy work, both Defendant Alvarado and Flournoy agreed that Flournoy was unable to work.  Flournoy further testified at his revocation hearing that he could not work.

It is also undisputed that to participate in the Houston County work release program, inmates must be able to work.  Indeed the Alabama statute that created the Houston County work release program explicitly authorizes a state sentencing court to release an inmate "for the purpose of obtaining and working at gainful employment."[5]  See Act No. 93-693, 1993 Ala. Laws 1324, § 1.  In other words, being able to work is an "essential eligibility requirement" for participation in the Houston County work release program.

_____

[5]Although the statute authorizes the state court to also release an inmate for other purposes conducive to rehabilitation, Flournoy does not claim that the state court released him for any other purpose than to participate in the work release program.

11

Given that Flournoy agrees he was unable to work, he cannot show he is an individual "who meets the essential eligibility requirements" of the work release program.[6]  Thus, there is no genuine dispute of fact as to whether Flournoy is a "qualified individual with a disability" within the meaning of Title II of the ADA. Accordingly, the district court properly granted the defendants' summary judgment on Flournoy's Title II claim.

## B.    Procedural Due Process Claim

A defendant in probation revocation proceedings, although not entitled to all the procedural protections afforded a defendant in criminal proceedings, is entitled to certain protections, including written notice of the alleged probation violations, disclosure of the evidence against him and an opportunity to be heard in person and present evidence and witnesses and to cross-examine witnesses, a neutral hearing body and a written statement by the factfinder of the reasons for the revocation and the evidence relied upon.  Black v. Romano, 471 U.S. 606, 611-12, 105 S. Ct. 2254, 2258 (1985); Morrissey v. Brewer, 408 U.S. 471, 92 S. Ct. 2593 (1972).[7]

---

[6]We note that Flournoy has never contended, and does not now contend, that he could meet this essential eligibility requirement "with reasonable modification."  See 42 U.S.C. § 12131(2)  Further, Flournoy presented no evidence in response to the defendants' summary judgment motion from which a jury could find that he could meet the work requirement with a reasonable modification.  To the contrary, Flournoy maintained that he was unable to work.

[7]Flournoy's appellate brief makes one passing reference to substantive due process, but does not present any argument or cite any authority related to a substantive due process claim.

Here, the record reflects that these due process requirements were satisfied at Flournoy's revocation hearing. Specifically, in accordance with Alabama law, the state court held a hearing before removing Flournoy from work release, revoking his probation and committing him to ADOC's custody. See Ala. Code § 15-18-175(d)(3) (providing for probation revocation hearing); Act No. 93-693, 1993 Ala. Laws 1324, 1328, § 10 (providing for work release revocation hearing). At the hearing, Flournoy acknowledged receiving notice of the alleged violation and indicated that he wanted to proceed with the hearing. Flournoy was given the opportunity to present evidence and testify (both of which he did) and to cross-examine the state's witness, Defendant Duffie (which he declined to do). The state court asked the parties whether there were any alternatives to revocation, and the prosecutor indicated that there were none. The state court explained in open court and in a subsequent written order the basis for the revocation—Flournoy's admitted inability to obtain or maintain employment. In short, Flournoy received all the process that was due.

Flournoy misses the point by arguing that his "transfer" from the work release program to ADOC custody violated his due process rights because it subjected him to conditions and a degree of confinement not authorized by his

---

Thus, any substantive due process claim is abandoned. See Doe v. Moore, 410 F.3d 1337, 1349 n.10 (11th Cir. 2005); Fed. R. App. P. 28(a)(9)(A).

conviction.  See Meachum v. Fano, 427 U.S. 215, 223-25, 96 S. Ct. 2532, 2538 (1976) (concluding that due process did not require prisoner to receive a hearing before being transferred between prisons because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose").  Flournoy received notice and a hearing.  So, to the extent he has a liberty interest sufficient to invoke due process protections (whether state-created or constitutional), Flournoy received those due process protections.

For these reasons, we affirm the district court's grant of summary judgment in favor of the defendants on Flournoy's due process and ADA claims.

**AFFIRMED.**