## PENNSYLVANIA DEPARTMENT OF CORRECTIONS ET AL. *v.* YESKEY

No. 97–634.   Argued April 28, 1998—Decided June 15, 1998

SCALIA, J., delivered the opinion for a unanimous Court.

*Paul A. Tufano* argued the cause for petitioners. With him on the briefs was *Syndi L. Guido.*

*Donald Specter* argued the cause for respondent. With him on the brief were *Eve H. Cervantez* and *Arlene B. Mayerson.*

*Irving L. Gornstein* argued the cause for the United States as *amicus curiae* urging affirmance. On the brief were *Solicitor General Waxman, Acting Assistant Attorney General Lee, Deputy Solicitor General Underwood, Paul R. Q. Wolfson, Jessica Dunsay Silver, Linda F. Thome,* and *Seth M. Galanter.**

---

*Briefs of *amici curiae* urging reversal were filed for the State of Nevada et al. by *Frankie Sue Del Papa,* Attorney General of Nevada, and *Anne B. Cathcart,* Senior Deputy Attorney General, *Betty D. Montgomery,* Attorney General of Ohio, *Jeffrey S. Sutton,* State Solicitor, and *Elise Porter* and *Todd R. Marti,* Assistant Attorneys General, *John M. Ferren,* Corporation Counsel of the District of Columbia, and *Gus F. Diaz,* Acting Attorney General of Guam, and by the Attorneys General for their respective jurisdictions as follows: *William H. Pryor, Jr.,* of Alabama, *Grant Woods* of Arizona, *Winston Bryant* of Arkansas, *Daniel E. Lungren* of California, *Gale A. Norton* of Colorado, *Robert A. Butterworth* of Florida, *Thurbert E. Baker* of Georgia, *Margery S. Bronster* of Hawaii, *Alan G. Lance* of Idaho, *Thomas J. Miller* of Iowa, *Carla J. Stovall* of Kansas, *Richard P. Ieyoub* of Louisiana, *J. Joseph Curran, Jr.,* of Maryland, *Frank J. Kelley* of Michigan, *Mike Moore* of Mississippi, *Joseph P. Mazurek* of Montana, *Don Stenberg* of Nebraska, *Philip T. McLaughlin* of New Hampshire, *Peter Verniero* of New Jersey, *Tom Udall* of New Mexico, *Dennis C. Vacco* of New York, *Michael F. Easley* of North Carolina, *Heidi Heitkamp* of North Dakota, *Jeffrey B. Pine* of Rhode Island, *Charles Molony Condon* of South Carolina, *Mark W. Barnett* of South Dakota, *John Knox Walkup* of Tennessee, *Dan Morales* of Texas, *Jan Graham* of Utah, *Mark L. Earley* of Virginia, *Julio A. Brady* of the Virgin Islands, and *William U. Hill* of Wyoming; for the Council of State Governments et al. by *Richard Ruda* and *James I. Crowley;* for the Criminal Justice Legal Foundation by *Kent S. Scheidegger;* and for the Republican Caucus of the Pennsylvania House of Representatives by *John P. Krill, Jr.,* and *David R. Fine.*

Briefs of *amici curiae* urging affirmance were filed for the National Association of Protection and Advocacy Systems et al. by *Steven J. Schwartz, James R. Pingeon,* and *Stephen F. Hanlon;* and for the Na-

JUSTICE SCALIA delivered the opinion of the Court.

The question before us is whether Title II of the Americans with Disabilities Act of 1990 (ADA), 104 Stat. 337, 42 U. S. C. § 12131 *et seq.*, which prohibits a "public entity" from discriminating against a "qualified individual with a disability" on account of that individual's disability, see § 12132, covers inmates in state prisons. Respondent Ronald Yeskey was such an inmate, sentenced in May 1994 to serve 18 to 36 months in a Pennsylvania correctional facility. The sentencing court recommended that he be placed in Pennsylvania's Motivational Boot Camp for first-time offenders, the successful completion of which would have led to his release on parole in just six months. See Pa. Stat. Ann., Tit. 61, § 1121 *et seq.* (Purdon Supp. 1998). Because of his medical history of hypertension, however, he was refused admission. He filed this suit against petitioners, the Commonwealth of Pennsylvania's Department of Corrections and several department officials, alleging that his exclusion from the Boot Camp violated the ADA. The District Court dismissed for failure to state a claim, Fed. Rule Civ. Proc. 12(b)(6), holding the ADA inapplicable to inmates in state prisons; the Third Circuit reversed, 118 F. 3d 168 (1997); we granted certiorari, 522 U. S. 1086 (1998).

Petitioners argue that state prisoners are not covered by the ADA for the same reason we held in *Gregory* v. *Ashcroft*, 501 U. S. 452 (1991), that state judges were not covered by the Age Discrimination in Employment Act of 1967 (ADEA), 29 U. S. C. § 621 *et seq. Gregory* relied on the canon of construction that absent an "unmistakably clear" expression of intent to "alter the usual constitutional balance between the

tional Prison Project of the ACLU Foundation et al. by *Steven R. Shapiro, David M. Porter, Marjorie Rifkin,* and *Elizabeth Alexander.*

Briefs of *amici curiae* were filed for Adapt et al. by *Stephen F. Gold;* and for the National Advisory Group for Justice et al. by *Michael Churchill.*

States and the Federal Government," we will interpret a statute to preserve rather than destroy the States' "substantial sovereign powers." 501 U. S., at 460–461 (citations and internal quotation marks omitted). It may well be that exercising ultimate control over the management of state prisons, like establishing the qualifications of state government officials, is a traditional and essential state function subject to the plain-statement rule of *Gregory*. "One of the primary functions of government," we have said, "is the preservation of societal order through enforcement of the criminal law, and the maintenance of penal institutions is an essential part of that task." *Procunier* v. *Martinez*, 416 U. S. 396, 412 (1974), overruled on other grounds, *Thornburgh* v. *Abbott*, 490 U. S. 401, 414 (1989). "It is difficult to imagine an activity in which a State has a stronger interest," *Preiser* v. *Rodriguez*, 411 U. S. 475, 491 (1973).

Assuming, without deciding, that the plain-statement rule does govern application of the ADA to the administration of state prisons, we think the requirement of the rule is amply met: the statute's language unmistakably includes State prisons and prisoners within its coverage. The situation here is not comparable to that in *Gregory*. There, although the ADEA plainly covered state employees, it contained an exception for "'appointee[s] on the policymaking level'" which made it impossible for us to "conclude that the statute plainly cover[ed] appointed state judges." 501 U. S., at 467. Here, the ADA plainly covers state institutions *without* any exception that could cast the coverage of prisons into doubt. Title II of the ADA provides:

> "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U. S. C. § 12132.

State prisons fall squarely within the statutory definition of "public entity," which includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government." § 12131(1)(B).

Petitioners contend that the phrase "benefits of the services, programs, or activities of a public entity," § 12132, creates an ambiguity, because state prisons do not provide prisoners with "benefits" of "programs, services, or activities" as those terms are ordinarily understood. We disagree. Modern prisons provide inmates with many recreational "activities," medical "services," and educational and vocational "programs," all of which at least theoretically "benefit" the prisoners (and any of which disabled prisoners could be "excluded from participation in"). See *Block* v. *Rutherford*, 468 U. S. 576, 580 (1984) (referring to "contact visitation program"); *Hudson* v. *Palmer*, 468 U. S. 517, 552 (1984) (discussing "rehabilitative programs and services"); *Olim* v. *Wakinekona*, 461 U. S. 238, 246 (1983) (referring to "appropriate correctional programs for all offenders"). Indeed, the statute establishing the Motivational Boot Camp at issue in this very case refers to it as a "program." Pa. Stat. Ann., Tit. 61, § 1123 (Purdon Supp. 1998). The text of the ADA provides no basis for distinguishing these programs, services, and activities from those provided by public entities that are not prisons.

We also disagree with petitioners' contention that the term "qualified individual with a disability" is ambiguous insofar as concerns its application to state prisoners. The statute defines the term to include anyone with a disability

> "who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U. S. C. § 12131(2).

Petitioners argue that the words "eligibility" and "participation" imply voluntariness on the part of an applicant who seeks a benefit from the State, and thus do not connote prisoners who are being held against their will. This is wrong on two counts: First, because the words do not connote voluntariness. See, e. g., Webster's New International Dictionary 831 (2d ed. 1949) ("eligible": "Fitted or qualified to be chosen or elected; legally or morally suitable; as, an *eligible* candidate"); *id.*, at 1782 ("participate": "To have a share in common with others; to partake; share, as in a debate"). While "eligible" individuals "participate" voluntarily in many programs, services, and activities, there are others for which they are "eligible" in which "participation" is mandatory. A drug addict convicted of drug possession, for example, might, as part of his sentence, be required to "participate" in a drug treatment program for which only addicts are "eligible." And secondly, even if the words did connote voluntariness, it would still not be true that all prison "services," "programs," and "activities" are excluded from the ADA because participation in them is not voluntary. The prison law library, for example, is a service (and the use of it an activity), which prisoners are free to take or leave. Cf. *Gabel* v. *Lynaugh*, 835 F. 2d 124, 125, n. 1 (CA5 1988) *(per curiam)* ("pro se civil rights litigation has become a recreational activity for state prisoners"). In the very case at hand, the governing law makes it clear that participation in the Boot Camp program is voluntary. See Pa. Stat. Ann., Tit. 61, § 1126(a) (Purdon Supp. 1998) ("An eligible inmate may make an application to the motivational boot camp selection committee for permission to participate in the motivational boot camp program"); § 1126(c) ("[c]onditio[n]" of "participa[tion]" is that applicant "agree to be bound by" certain "terms and conditions").

Finally, petitioners point out that the statute's statement of findings and purpose, 42 U. S. C. § 12101, does not mention prisons and prisoners. That is perhaps questionable, since the provision's reference to discrimination "in such critical

areas as . . . institutionalization," § 12101(a)(3), can be thought to include penal institutions. But assuming it to be true, and assuming further that it proves, as petitioners contend, that Congress did not "envisio[n] that the ADA would be applied to state prisoners," Brief for Petitioners 13–14, in the context of an unambiguous statutory text that is irrelevant. As we have said before, the fact that a statute can be "'applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth.'" *Sedima, S. P. R. L.* v. *Imrex Co.*, 473 U. S. 479, 499 (1985) (citation omitted).

Our conclusion that the text of the ADA is not ambiguous causes us also to reject petitioners' appeal to the doctrine of constitutional doubt, which requires that we interpret statutes to avoid "grave and doubtful constitutional questions," *United States ex rel. Attorney General* v. *Delaware & Hudson Co.*, 213 U. S. 366, 408 (1909). That doctrine enters in only "where a statute is susceptible of two constructions," *ibid.* And for the same reason we disregard petitioners' invocation of the statute's title, "Public Services," 104 Stat. 337. "[T]he title of a statute . . . cannot limit the plain meaning of the text. For interpretive purposes, [it is] of use only when [it] shed[s] light on some ambiguous word or phrase." *Trainmen* v. *Baltimore & Ohio R. Co.*, 331 U. S. 519, 528–529 (1947).

We do not address another issue presented by petitioners: whether application of the ADA to state prisons is a constitutional exercise of Congress's power under either the Commerce Clause, compare *Printz* v. *United States*, 521 U. S. 898 (1997), with *Garcia* v. *San Antonio Metropolitan Transit Authority*, 469 U. S. 528 (1985), or § 5 of the Fourteenth Amendment, see *City of Boerne* v. *Flores*, 521 U. S. 507 (1997). Petitioners raise this question in their brief, see Brief for Petitioners 22–23, but it was addressed by neither the District Court nor the Court of Appeals, where petitioners raised only the *Gregory* plain-statement issue. "Where

issues are neither raised before nor considered by the Court of Appeals, this Court will not ordinarily consider them." *Adickes* v. *S. H. Kress & Co.*, 398 U. S. 144, 147, n. 2 (1970) (citations omitted). See also *Dothard* v. *Rawlinson*, 433 U. S. 321, 323, n. 1 (1977); *Duignan* v. *United States*, 274 U. S. 195, 200 (1927). We decline to do so here.

\*　　\*　　\*

Because the plain text of Title II of the ADA unambiguously extends to state prison inmates, the judgment of the Court of Appeals is affirmed.

*It is so ordered.*