229 F.Supp.2d 938 (2002)
James H. ARLT, Jr., Plaintiff,
v.
MISSOURI DEPARTMENT OF CORRECTIONS, et al., Defendants.
No. 2:00 CV 79 DDN.
United States District Court, E.D. Missouri, Eastern Division. Northern Division.
September 17, 2002.

*939 MEMORANDUM

NOCE, United States Magistrate Judge.
This matter is before the court on the parties' cross motions for summary judgment (Doc. Nos. 42 and 43). The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c). A hearing was held on the motions.

I.
James H. Arlt, Jr., a Missouri inmate, commenced this action under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, et seq., and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), against the Missouri Department of Corrections (MDOC) and six named prison officials sued in their individual and official capacities.[1] The action is based upon defendants' alleged failure to provide plaintiff with accommodations for taking the high school GED (General Equivalency Diploma) test. The record establishes that plaintiff is blind in one eye and has learning disabilities. He dropped out of school in the ninth grade in 1976. Plaintiff has been an MDOC inmate since October 1995, when he was incarcerated in Moberly, Missouri.
MDOC offers classes to inmates wishing to obtain a high school GED. It only offers special education classes to inmates under age twenty-two. MDOC policy requires an inmate to score 250 on a pre-GED test before he is allowed to take the GED test. In 1999, MDOC implemented a policy requiring that all inmates holding prison jobs which paid "premium wages" must have a high school diploma or GED. At that time, plaintiff had a premium-pay job which paid approximately $70.00 per month. He took the pre-GED test numerous times but never achieved a score of 250.
Plaintiff's prison grievance record indicates that he began to seek accommodations for his disabilities with regard to the GED test in March 1999. Two prison psychologists recommended to the Education Supervisor at Moberly that plaintiff *940 be allowed extra time for GED testing because of his reading disability. See Exh. to Defs' Mot. for Summ. J. (Doc. No. 42).
While seeking accommodations, plaintiff continued to take the pre-GED test. In June and July 1999, he scored 217 and 246, respectively. In accordance with MDOC's new policy, in July 1999, plaintiff lost his premium-pay job and was given a job that paid $7.50 per month. Plaintiff filed an Informal Resolution Request (IRR) in which he noted his learning disabilities and visual impairment and asked to attend special education classes or to be given extra time to complete the pre-GED and GED tests. He attached a copy of a report of a psychological evaluation conducted in October 1974 by the Special School District of St. Louis County, Missouri, when he was age fourteen. The report indicates that plaintiff's full-scale IQ was 88 and that, while he was "capable of average intellectual functioning," his verbal learning skills were "depressed," his verbal functioning was "depressed as a result of related learning problems," and he exhibited "global academic retardation and specific reading disabilities." See id.
In October 1999, a prison official denied plaintiff's IRR, writing: "by perseverance you will obtain your GED." Plaintiff was transferred to MDOC's Farmington, Missouri, facility in January 2000.
Plaintiff commenced this action pro se on October 2, 2000. In an amended complaint, filed by appointed counsel, plaintiff seeks declaratory relief and an injunction mandating that (1) he be restored to a premium-pay job, (2) learning-disabled inmates over age 21 be provided with special education classes, and (3) he be allowed to take the GED test with accommodations including, but not limited to, more time and a reader or large-print test. He also seeks compensatory and punitive damages, and attorney's fees and costs. The individual defendants are Dora Schriro, former Director of MDOC; Michael Groose, former Assistant Director of MDOC; James Purkett, Superintendent at Farmington; Anthony Gammon, Superintendent at Moberly; Tom Anderson, ADA coordinator at Moberly; David Brown, former Education Supervisor at Moberly; and Ed Moran, Education Supervisor at Farmington.
In October 2001, plaintiff was transferred from Farmington to the Missouri Eastern Correctional Center (MECC), where he is presently confined. MDOC allowed him to take the GED test in November without further pre-GED testing. The Missouri Department of Elementary and Secondary Education (DESE), which administers the test in Missouri prisons, gave him additional testing time, a large-print test booklet, and an audiotape of the booklet.[2] Plaintiff passed the test. He has not, however, been restored to a premium-pay job.

II.
Defendants do not dispute that plaintiff is disabled within the meaning of both the ADA and the Rehabilitation Act. They argue that they are entitled to summary judgment on the ADA claim, because MDOC is entitled to Eleventh Amendment immunity; the individual defendants acting in their personal capacities cannot be liable under Title II of the ADA, which applies to "public entities;" and the individual defendants cannot be liable in their official capacities for prospective injunctive relief, because, now that plaintiff has been accommodated *941 on the GED test, any claim for such relief is moot.
Further, defendants argue that they are entitled to summary judgment on the Rehabilitation Act claim, because many inmates in the general GED classes have learning disabilities and the classes are designed to help them. The individual defendants contend they should not be held liable for failing to provide plaintiff with more accommodations than are provided to other learning-disabled inmates. Defendants assert that plaintiff's grievance did not mention his visual impairment. Alternatively, defendants argue that the individual defendants are entitled to qualified immunity from the Rehabilitation Act claim, because there "is no preexisting law that any of the individual defendants were required to act contrary to DOC policy and provide Arlt with anything other than the classes he was provided and attended with other inmates who had learning deficiencies." See Defs' Memo in Support of Mot. for Summ. J. at 5 (Doc. No. 42). See id. at 6.
Plaintiff responds that he is entitled to summary judgment on his claim against the individual defendants in their official capacities for prospective injunctive relief in the form of an order that he be given the first premium-pay job that becomes available at MECC. He argues that he may recover damages from MDOC, because it waived its Eleventh Amendment immunity with respect to the Rehabilitation Act by accepting federal funds, and that he should receive damages for his anguish, as well as backpay. Last, he maintains that qualified immunity does not shield the individual defendants in their individual capacities from damages. (Doc. Nos. 43 and 44).
Defendants reply that plaintiff is not entitled to prospective injunctive relief, because inmates have no right to a particular job or particular wages in prison. They also argue that it is not clear that he passed the GED test, for he was provided with accommodations, and that the only premium-pay jobs at MECC (where is he presently incarcerated) are in furniture refinishing, an area in which he has no expertise. Moreover, defendants argue that plaintiff's claim for damages for anguish is precluded by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(e): "No Federal civil action may be brought by a prisoner confined in ... prison ... for mental or emotional injury suffered while in custody without a prior showing of physical injury." (Doc. No. 46.)
In a reply brief, plaintiff reasserts his right to reinstatement to a premium-pay job under the ADA, and to damages under the Rehabilitation Act. In support of his position that damages for emotional distress are recoverable under the Rehabilitation Act (Doc. No. 47), he cites Mason v. Schriro, 45 F.Supp.2d 709 (W.D.Mo.1999) (PLRA does not bar recovery of damages for emotional distress in prisoner's claim for discrimination brought under 42 U.S.C. § 1997e(e)).

III.
Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, shows that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R.Civ.P. 56(c); Turner v. Holbrook, 278 F.3d 754, 757 (8th Cir.2002).

Claims under Title II of the ADA
Title II of the ADA provides: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Its prohibition of discrimination *942 by public entities "unmistakably includes State prisons and prisoners." Pennsylvania Dep't of Corrs. v. Yeskey, 524 U.S. 206, 209, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998).
MDOC is an agency of the State of Missouri. The Eleventh Amendment guarantees that nonconsenting states or their agencies may not be sued by private individuals in federal court. Congress, however, may abrogate the states' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. Board of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). Although the Court in Yeskey ruled that Congress intended the two acts to apply to state prisons, the Court specifically declined to rule on whether this application is a constitutional exercise of Congress' legislative power. See Yeskey, 524 U.S. at 211, 118 S.Ct. 1952.
The Eighth Circuit has since held that Title II was beyond Congress' power under the Fourteenth Amendment's enforcement clause. See Alsbrook v. City of Maumelle, 184 F.3d 999, 1007 (8th Cir.1999) (en banc). Thus, Title II was not a valid abrogation of a state's Eleventh Amendment immunity, and the district court lacked subject matter jurisdiction over a city employee's Title II claims seeking injunctive relief, as well as compensatory and punitive damages, against the state, a state agency, and the agency's commissioners in their official capacities. See id. at 1007-10. The court further held that state officials could not be sued under Title II in any capacity, because Title II provides redress for discrimination by a "public entity." See id. at 1005 n. 8.
Thereafter, the Supreme Court held that Title I of the ADA[3] did not waive a state's Eleventh Amendment immunity. See Garrett, 531 U.S. at 374, 121 S.Ct. 955. The Court noted, however, that a Title I ADA action for prospective injunctive relief could be brought under Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), against state officials in their official capacities. See id. at n. 9, 28 S.Ct. 441. The Eighth Circuit has held that a state prisoner could likewise bring a (non-employment) Ex Parte Young claim under Title II, and that Alsbrook did not bar such a suit. See Randolph v. Rodgers, 253 F.3d 342, 347-48 (8th Cir.2001) (ADA's "public entity" language does not prohibit Ex Parte Young claim under Title II). Thus, in the present case, summary judgment is appropriate under the Eleventh Amendment with respect to plaintiff's ADA claim against MDOC, and with respect to his claims for damages against the individual defendants in their official capacities. Under Alsbrook, the individual defendants are also entitled to summary judgment on the ADA claims against them in their individual capacities, because the statute is addressed to public entities.
The court further concludes that the individual defendants are entitled to summary judgment on plaintiff's ADA Ex Parte Young claim for prospective injunctive relief, on the ground of mootness. None of the individual defendants is currently in a position to accomplish the injunctive relief sought. See Randolph, 253 F.3d at 345-46 (prisoner's claim for injunctive relief is moot as to prison officials not employed at prisoner's current place of incarceration). The court would allow plaintiff to amend his complaint by naming the current Director and/or Assistant Director *943 of MDOC, if the court believed that injunctive relief were appropriate here. However, even if plaintiff were to prevail on his ADA claim, "inmates have no constitutional right to be assigned to a particular job." See Flittie v. Solem, 827 F.2d 276, 279 (8th Cir.1987).
Significantly, here there is no suggestion that plaintiff's transfers were for an improper purpose. Nor does plaintiff claim that he is qualified for the premium-pay jobs that exist at his current place of confinement. Thus, even absent any discrimination, it is likely that plaintiff would not have a premium-pay job at this point.

Claims under the Rehabilitation Act
The Rehabilitation Act provides:
No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ....
29 U.S.C. § 794(a).
Aside from the federal funding requirement, the Rehabilitation Act is similar in substance to the ADA and "cases interpreting either are applicable and interchangeable." Gorman v. Bartch, 152 F.3d 907, 912 (8th Cir.1998) (internal quotation omitted). Thus, the above rulings apply equally to plaintiff's claims under the Rehabilitation Act, with one important exception: Eleventh Amendment immunity does not apply to plaintiff's Rehabilitation Act claims for damages and equitable relief against MDOC and the individual defendants in their official capacities, because it is undisputed that MDOC accepted federal funds under the Rehabilitation Act. See Randolph, 253 F.3d at 348-49 (plaintiff may seek prospective injunctive relief against prison director in her official capacity; if MDOC waived its immunity, plaintiff also would be able to proceed against MDOC on § 504 claim, seeking damages as well as equitable relief).
To prevail on a claim under § 504 of the Rehabilitation Act, plaintiff must demonstrate that (1) he is a qualified individual with a disability; (2) he was denied the benefits of a program or activity of a public entity which receives federal funds; and (3) he was discriminated against based on his disability. Gorman, 152 F.3d at 911. Defendants may demonstrate as an affirmative defense that a requested accommodation would constitute an undue burden. Id. at 912.
Upon careful consideration, the court concludes that plaintiff is entitled to summary judgment on his Rehabilitation Act claim against MDOC on the issue of liability. As noted above, defendants do not dispute that plaintiff is disabled within the meaning of the Rehabilitation Act.[4] Nor has MDOC claimed that the requested accommodations to allow plaintiff to participate in the GED program constituted an undue burden. In fact, after this suit was *944 commenced, MDOC accommodated plaintiff in essentially the manner he was seeking. The fact that plaintiff passed the GED test the first time he took it with the accommodations strongly suggests that, but for MDOC's refusal to accommodate him earlier, he would have obtained his GED sooner, and not have lost his premium-pay job when he did. The court concludes that under the circumstances, plaintiff is entitled to damages in the form of backpay  the differential between his premium-pay job and his regular job  for a limited period. In light of the discussion above regarding MDOC's discretion to transfer prisoners and to assign them jobs, the court believes that this period should run from the date plaintiff lost his premium-pay job, because he did not have a GED, to the date he was transferred from Moberly.
Although the Eighth Circuit has not yet addressed whether a prisoner may recover damages for mental anguish under the Rehabilitation Act, this court finds persuasive decisions of the Eleventh and District of Columbia Circuits and holds that the PLRA precludes such damages absent a showing of physical injury. See 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner ... for mental or emotional injury suffered while in custody without a prior showing of physical injury"); Cassidy v. Ind. Dep't of Corrs., 199 F.3d 374, 375-76 (7th Cir.2000) (§ 1997e(e)'s use of "`no' means no;" refusing, in light of § 1997e(e)'s "plain language," to carve out exceptions for which Congress did not provide); Davis v. District of Columbia, 158 F.3d 1342, 1349 (D.C.Cir.1998) (§ 1997e(e) precludes claims for emotional injury without any prior physical injury, regardless of statutory or constitutional basis of legal wrong).
Finally, plaintiff's claim for punitive damages under the Rehabilitation Act is foreclosed by Supreme Court precedent. See Barnes v. Gorman, 536 U.S. 181, 122 S.Ct. 2097, 2103, 153 L.Ed.2d 230 (2002) (punitive damages may not be awarded in private suits brought under § 504).
An appropriate order is issued herewith.

ORDER
In accordance with the Memorandum filed herewith,
IT IS HEREBY ORDERED that the motion of plaintiff for summary judgment (Doc. No. 43) is sustained in part and denied in part. The motion is sustained with respect to plaintiff's claim under the Rehabilitation Act against MDOC and the individual defendants in their official capacities for compensatory damages in the form of backpay. The motion is denied in all other respects.
IT IS FURTHER ORDERED that the motion of defendants for summary judgment (Doc. No. 42) is denied with respect to plaintiff's claim under the Rehabilitation Act against MDOC and the individual defendants in their official capacities for compensatory damages in the form of backpay. The motion is sustained in all other respects.
IT IS FURTHER ORDERED that a telephone status conference of the court with counsel for all parties is set for Monday, October 7, 2002, at 2:00 p.m.
NOTES
[1] Plaintiff has dismissed his claims under 42 U.S.C. § 1983 and the Missouri Human Rights Act, Mo.Rev.Stat. § 213.010, et seq. See Pl.'s Resp. to Def.'s Mot. for Summ. J. at 1 n. 1 (Doc. No. 43).
[2] At the hearing on the motions for summary judgment, defendants' counsel explained that, when a prisoner is referred to DESE for the GED test, MDOC indicates on a form whether any special accommodations are appropriate. The form for plaintiff has not been made a part of the record before the court.
[3] This Title prohibits "discriminati[on] against a qualified individual with a disability because of the disability ... in regard to ... terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).
[4] ADA principles generally apply to the Rehabilitation Act. The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(1). The Act does not define the terms "physical or mental impairment," "substantially limits," or "major life activities," and no agency has been given authority to issue regulations implementing the generally applicable provisions of the ADA. Sutton v. United Air Lines, Inc., 527 U.S. 471, 479, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). However, the Department of Justice (DOJ), which Congress assigned to write the regulations for Subchapter III of the ADA, defines "physical or mental impairment" as including "specific learning disabilities." See 28 C.F.R. § 36.104 (2000). The DOJ's regulations further define "major life activities" as including "learning." Id.