BOWEN, District Judge,
dissenting:
Articlé III of the United States Constitution requires a genuine case or controversy be before the court in order for the court to rule on it. Accordingly, our standing jurisprudence exists to separate those cases that present a case or controversy from those that simply ask the court to issue an advisory opinion. In the present case, I fully agree with the district court that this plaintiff “tester” lacked standing to sue. Therefore, I respectfully dissent from the scholarly, detailed, but mistaken opinion of the majority.
The Americans with Disabilities Act (“ADA”), 42 U.S.C. §§ 12101-12213 (2006), is counted among the most salutary remedial laws ever passed by a well-intended Congress. See PGA Tour, Inc. v. Martin, 532 U.S. 661, 676, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001) (“[T]he [ADA] has been described as a milestone on the path to a more decent, tolerant, and progressive society.”) (internal quotations and citations omitted). Because of its commendable purpose, its provisions are liberally construed. See § 12101(b)(1) (“It is the purpose of [the ADA] to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.”); Pennsylvania Dep’t of Corr. v. Yeskey, 524 U.S. 206, 212, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998) (“[T]he fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth.”). The district court, mindful of its obligations under the law, approached this case with circumspection, obedient to Congress’ intent and the mandate of the ADA.
Consistent with Rule 12(b)(1) of the Federal Rules of Civil Procedure, the district court assembled, reviewed, and determined whether underlying facts supported its subject-matter jurisdiction in the instant matter. See U.S. Const. Art. Ill § 2 (“The judicial Power shall extend to ... Cases [and] ... Controversies.”). Those facts, properly considered by the district court, are beyond cavil.
The Plaintiff is a serial litigator. The misfortune of his disability does not make him less so. Plaintiff has been a party to 170 cases in the Southern District of Florida and 101 in the Middle District.[1] His travels up, down, and across the byways of South Florida, doggedly in search of a grievance to call his own, are worthy of a Carl Hiassen plot. Seeking injunctions, costs in every variety, and monetary grist for the mills of his attorneys’ offices (the wheels of which surely grind exceeding expensive), this plaintiff is doubtless a force with which many a small business will reckon.
In a thoroughly departmental way, the majority parsed the prongs and principles of standing better applied to a more typical plaintiff in a more conventional case. There is nothing conventional about this matter. The district court (in more polite terms) identified the Plaintiff for what he is: the volunteer point man for a litigation combat patrol.
The majority fail to see a distinguishing principle between the roles of a “tester” under the ADA and a “tester” under the *1342 Fair Housing Act, 42 U.S.C. §§ 3601-3631 (2006). To- me, the distinction readily appears. In a Fair Housing Act case, the permit extended to a “tester” is grounded in necessity. In such an endeavor the “tester” is seeking to unearth information and evidence which bears upon the motive, intent, and state of mind of those who would covertly or secretly practice invidious discrimination. Cf. Sec’y of U.S. Dep’t of Hous. and Urban Dev. ex rel. Herron v. Blackwell, 908 F.2d 864, 870 (11th Cir.1990) (applying the burden-shifting framework used in a Title VII employment discrimination case to root out veiled discrimination in a FHA case) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). On the other hand, in an ADA case the so-called “tester” is a self-appointed private attorney general foraging for conditions, defects, and shortcomings which are physically manifest for all who would see. Accordingly, even the nomenclature of a “tester” in a Title III ADA case is inappropriate.
The district court did not dismiss the case because it labeled Houston a “tester.” It dismissed Houston’s complaint because this plaintiff has no standing to bring this case. As found by the district court, “The ADA permits suits to be brought by any person who is subjected to discrimination on the basis of disability or who has reasonable grounds for believing that he is about to be subjected to discrimination on that basis.” Nevertheless, although Congress may create legal rights and interests in others, it may not bypass the Constitution’s “Case or Controversy” requirement. Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Thus, as the district court properly observed, the fundamental issue before it was whether Houston had “constitutional standing to bring this action against [Marod Supermarkets].”
The crux of the district court’s inquiry was whether the plaintiff had demonstrated a likelihood that he would “return to [Presidente Supermarket] and continue to suffer” from its noncompliance with the ADA. Carefully sifting Houston’s complaint and supplemental affidavit, the district court found four factors dispositive in its inquiry: (1) the thirty-plus miles separating the Supermarket and Houston’s residence; (2) Houston’s negligible previous patronage of the defendant’s business; (3) Houston’s “plans” to return to the Supermarket, not to continue his nonexistent patronage of the Supermarket, but rather to only further his litigation interests; and (4) Houston’s intermittent travel to his attorneys’ law offices to pursue his litigation interests. The district court ultimately concluded that Houston failed to demonstrate the threat of an actual and imminent injury at the hands of Defendant. Moreover, Houston’s vague, generalized affidavit and own reference to Defendant’s Supermarket as a “motel” further heightened the court’s skepticism that his complaint was “a genuine prayer for relief made by an aggrieved party.”
It is my conclusion that the district court was not only not clearly erroneous, but entirely correct in its decision that this plaintiff “tester” lacked standing to sue. That this plaintiff has uttered some incantations about his intentions to visit a grocery store over thirty miles from his home (about a gallon of gasoline in the best of cars), possibly to make another eighteen-dollar purchase, should be of no avail. This Court should see this case as the district court saw it — a disingenuous medium for self-promotion and the multiplication of attorney’s fees. See 42 U.S.C. § 12205. Despite Houston’s obvious intent in pursuing these 271 lawsuits, “ ‘[t]he province of the Court is solely to decide on the rights of individuals.’ Vindicating the public interest ... is the function of Con *1343 gress and the Chief Executive.” Lujan, 504 U.S. at 576, 112 S.Ct. 2130 (1992) (quoting Marbury v. Madison, 5 U.S. (1 Cranch) 137, 170, 2 L.Ed. 60 (1803) (Marshall, C.J.)) (emphasis added).
The majority’s rigid focus on the conventional criteria for standing obscures the facts the district court so clearly perceived. “What you see, yet cannot see over, is as good as infinite.” Thomas Carlyle, 2 Sartor Resartus 84 (London, William Clowes & Sons 1838) (1833).
Because this plaintiff lacks standing to bring this lawsuit, I would ajfirm the district court in its dismissal of the case.

. It should be noted that, unless he has been allowed some remission or reduction thereof, Plaintiffs filing fees alone in these cases would amount to $108,000.00 at today's rates in the two districts.