In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1804

MATHEW NEISLER,

*Plaintiff-Appellant,*

*v.*

ROBERT TUCKWELL, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 13-CV-821 — **Rudolph T. Randa**, *Judge.*

SUBMITTED SEPTEMBER 2, 2015[*] — DECIDED NOVEMBER 25, 2015

Before WOOD, *Chief Judge*, and POSNER and ROVNER, *Circuit Judges.*

WOOD, *Chief Judge.* After Mathew Neisler, a Wisconsin inmate, lost his prison job, he brought a lawsuit under the Americans with Disabilities Act, 42 U.S.C. § 12132, asserting

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary in this case. The appeal is thus submitted on the briefs and record. See FED. R. APP. P. 34(a)(2)(C).

that the defendant prison administrators had fired him in violation of Title II of that statute. The district court granted summary judgment for the defendants, and Neisler has appealed. Because Title II does not apply to a prisoner's claim of employment discrimination in a prison job, we affirm.

Neisler worked as a stockman in food service during his incarceration at the Waupun Correctional Institution. The Wisconsin Department of Corrections does not permit prisoners to hold the same position for more than two years. See WIS. DEP'T OF CORRS., DIV. OF ADULT INSTS. POLICY 309.00.01. Under that policy, Neisler's job as a stockman was scheduled to end in November 2012. In March of that year, however, an improperly loaded cart overturned on Neisler as he was unloading an elevator. The falling cart broke his prosthetic leg and left a one-inch cut where the prosthesis had been attached. After the accident Neisler managed for a time to continue working using a temporary prosthesis. But four months later he was in too much pain to work, and medical staff accordingly put him on "sick cell," a designation prohibiting an inmate from working because of an illness. While on "sick cell" status, Neisler continued to receive the same hourly wage of $0.42 per hour. See WIS. DEP'T OF CORRS., DIV. OF ADULT INSTS. POLICY 309.55.01.

Three months after that, in October 2012, Robert Tuckwell, the Food Service Administrator at Waupun, fired Neisler, citing "medical" reasons for his action. The loss of his job caused Neisler to be removed from sick cell and to lose his wage supplement. On the same day as his firing, Neisler filed a grievance in which he asserted that he had been "penalized" for being unable to "perform [his] job duties because of a work related accident" and asked to be

paid until his prosthesis could be repaired or he could begin another job. James Muenchow, an inmate complaint examiner, recommended denying Neisler's grievance, and William Pollard, the warden, adopted that recommendation. Neisler's administrative appeal was unsuccessful.

Neisler began a new job in January 2013. Later that month he received $76.96 in back pay covering the seven-week gap between the cessation of his wage supplement and the time when his position as a stockman had been scheduled to end. Unsatisfied by that adjustment, Neisler sued Tuckwell, Muenchow, and Pollard in July 2013 seeking worker's compensation and alleging that he had been fired because of a disability in violation of Title II of the ADA. He asked for about $50,000 in monetary damages. At screening, see 28 U.S.C. § 1915A, the district court permitted Neisler to proceed with his claim of disability discrimination.

The defendants moved for summary judgment, asserting that Neisler is not entitled to pursue an employment-discrimination claim under Title II, that the state's sovereign immunity bars him from suing state officials for monetary damages, and that even if those hurdles were surmounted, Neisler has no case on the merits. The district court rejected the defendants' argument about the scope of Title II; it reasoned that the ADA applies to vocational programs in prisons, and that this category is broad enough to include Neisler's job as a stockman. The court bypassed the question of sovereign immunity. These favorable rulings in the end did not help Neisler, however, because the court granted summary judgment to the defendants on the ground that no rational finder of fact could find disability discrimination. Neisler was fired because he was too sick to work, the court

wrote, not because of any disability. It thus entered summary judgment for the defendants.

Neisler argues that the district court disregarded what he believes to be evidence of discrimination. But his case founders on a more basic point: contrary to what the district court held, Title II of the ADA does not cover a prisoner's claim that he suffered workplace discrimination on the basis of a disability. Title II provides that public entities may not exclude "a qualified individual with a disability" from participating in or receiving the benefits of "services, programs, or activities" or otherwise subjecting that person to discrimination. 42 U.S.C. § 12132. It does not apply to claims of employment discrimination. *Brumfield v. City of Chicago*, 735 F.3d 619, 622 (7th Cir. 2013); *Reyazuddin v. Montgomery Cnty., Md.*, 789 F.3d 407, 420 (4th Cir. 2015) (collecting cases). Title I of the ADA is the exclusive remedy under the Act for claims of disability discrimination in employment. See *Brumfield*, 735 F.3d at 630; *Elwell v. Okla. ex rel. Bd. of Regents of the Univ. of Okla.*, 693 F.3d 1303, 1309 (10th Cir. 2012).

In order to circumvent Title I's applicability, Neisler asserts that his prison job is part of a vocational program and thus he may properly use Title II, which addresses programs (among other things). It is true that the Supreme Court has interpreted the statutory terms "services, programs, or activities" to include a prison's vocational programs. See *Pa. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 210 (1998). But this does not help Neisler unless we were to accept his effort to equate prison employment with a vocational program. And we do not accept that equation, because important differences exist between a vocational program and paid employment. Title II applies to vocational programs, the Supreme Court ex-

plained, because those programs "theoretically 'benefit' the prisoners." *Id.* As the Tenth Circuit has observed, "we don't ordinarily understand employees who help make programs possible as themselves participating in or receiving their benefits." *Elwell*, 693 F.3d at 1307; see *Brumfield*, 735 F.3d at 626 ("[E]mployment is not ordinarily conceptualized as a 'service, program, or activity' of a public entity."); *Zimmerman v. Or. Dep't of Justice*, 170 F.3d 1169, 1176 (9th Cir. 1999) (explaining that securing or holding employment is not receipt of services, nor does public employment constitute program or activity). The Wisconsin statutes governing prison labor reflect this distinction. Vocational programs are "schools" in which inmates are instructed "in trades and domestic science." See WIS. STAT. § 303.05. Prison employment, in contrast, entails work "necessary to be done in the regular business thereof" and for which prisoners may receive "pecuniary earnings and rewards." See WIS. STAT. § 303.19(2), (4).

The district court relied on *Armstrong v. Schwarzenegger*, 622 F.3d 1058 (9th Cir. 2010), to conclude that Neisler's stockman job was a type of vocational program, but *Armstrong* does not support that broad conclusion. It involved state prisoners' access to grievance procedures while they were housed in county jails, *id.* at 1063, not work performed by prisoners. Indeed, the court in *Armstrong* expressly distinguished access to grievance procedures (to which Title II applies) from discrimination in employment (to which Title II does not apply). *Id.* at 1067 n.2.

In addition, although Neisler does not argue that his complaint raises a claim under Title I, he would fare no better even if we assume that he meant to invoke Title I as well.

To begin with, it is questionable whether a prisoner working at a prison job qualifies as an "employee" within the meaning of Title I, see *Murdock v. Washington*, 193 F.3d 510, 512 (7th Cir. 1999); *White v. State of Colo.*, 82 F.3d 364, 367 (10th Cir. 1996); see also *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991) (inmates not employees under Rehabilitation Act). If that problem is surmounted, a new one would arise in the form of the Eleventh Amendment, which bans any award of monetary damages under Title I against state defendants acting in their official capacities. See *Bd. of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (2001); *Toeller v. Wis. Dep't of Corrs.*, 461 F.3d 871, 872–73 (7th Cir. 2006). The defendants here have not taken any step that can be construed as a waiver, see *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675–76 (1999); *MCI Telecomms. Corp. v. Ill. Bell Tel. Co.*, 222 F.3d 323, 338–39 (7th Cir. 2000), nor are they amenable to suit in their individual capacities for alleged violations of Title I, see *Silk v. City of Chi.*, 194 F.3d 788, 797 n.5 (7th Cir. 1999), *Albra v. Advan, Inc.*, 490 F.3d 826, 830 (11th Cir. 2007).

Neisler does not gain any ground by seeking relief under Title III of the ADA, a theory that he specifically mentions for the first time on appeal. That title prohibits discrimination by places of public accommodation; it does not cover claims of employment discrimination. See 42 U.S.C. § 12182(a); *Menkowitz v. Pottstown Mem'l Med. Center*, 154 F.3d 113, 118–19 (3d Cir. 1998) ("[I]t is evident that Congress sought to regulate disability discrimination in the area of employment exclusively through Title I, notwithstanding the broad language of Title III."); see also *Brumfield*, 735 F.3d at 628 (concluding that "Title I specifically, comprehensively, and exclusively addresses disability discrimination in em-

ployment"). Moreover, because Title III permits only injunctive relief for a person in Neisler's position, and he now works in another prison job, any claim seeking an accommodation related to the stockman position would be moot. See *Wojewski v. Rapid City Reg'l Hosp., Inc.*, 450 F.3d 338, 342 (8th Cir. 2006).

Neisler also asserts that the district court erred in dismissing at screening his claim for worker's compensation. The court reasoned that this claim could not proceed because the Wisconsin statute allowing a prison inmate to recover for injuries incurred during a work assignment also provides that compensation does not become available until after his release. See WIS. STAT. § 303.21(1)(a). Commentators agree with the district court's reading of the statute, see 2 RIGHTS OF PRISONERS § 8:21 (4th ed. 2014); 17 WIS. PRACTICE, WORKERS' COMP. LAW § 7:12 (2014), and Neisler has not submitted any authority—nor have we found any—suggesting that the district court misinterpreted state law.

The judgment of the district court is AFFIRMED.